FILED

September 6, 2017

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 9:59 A.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Jack Glasgow ) | Docket No.   2017-05-0225 |
| ) | |
| v. ) | State File No. 3128-2017 |
| ) | |
| 31-W Insulation Co., Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Dale Tipps, Judge ) | |

---

**Affirmed and Remanded-Filed September 6, 2017**

---

The employee suffered multiple injuries when he fell several feet while installing insulation in the course of his work for the employer. Although not disputing that the employee was injured in the course of his employment, the employer denied the claim based upon affirmative defenses grounded in the employee's alleged willful misconduct and willful failure or refusal to use a safety device in the performance of his work. Following an expedited hearing, the trial court awarded benefits, determining that the employee was likely to meet his burden of establishing that he suffered a compensable injury at a trial on the merits and that the employer was unlikely to meet its burden of proving the elements of its affirmative defenses. The employer has appealed, questioning the trial court's determination that it failed to prove bona fide enforcement of the safety rule at issue. We hold that the preponderance of the evidence supports the trial court's determination that the employer failed to prove its affirmative defense. Accordingly, we affirm the trial court's decision and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Owen R. Lipscomb, Brentwood, Tennessee, for the employer-appellant, 31-W Insulation Co., Inc.

Andrea Meloff, Nashville, Tennessee, for the employee-appellee, Jack Glasgow

**Factual and Procedural Background**

On January 11, 2017, Jack Glasgow ("Employee") was in the course of his work with 31-W Insulation Co. ("Employer"), when he fell from a height of several feet while installing insulation in the two-story foyer of a home under construction. He suffered multiple injuries, including a head laceration, and was rendered unconscious. Presumably due to his head injury, he denies having any memory of the fall. In an expedited hearing, he testified he did not remember the day of the accident, did not remember where he was standing when he fell, and did not have any idea how he fell. No one witnessed the fall.

According to the testimony of Employee's co-worker who was present at the worksite and Employer's witnesses who testified at the hearing, Employee was standing on the top plate of the interior first floor front foyer wall while holding onto a stud with one hand and placing insulation batts between the studs with his other hand. The parties do not dispute that Employee fell while installing insulation, nor do they dispute that he suffered severe injuries. However, Employer denied the claim, asserting as affirmative defenses that Employee engaged in willful misconduct and failed to use safety devices available to him.

Employee was working with another insulation installer, Brian Helton, on the day of the accident. When Employee fell, Mr. Helton was working in another area of the house on the second floor installing ceiling insulation while wearing stilts. Mr. Helton testified in a deposition that he saw Employee working prior to the fall and that Employee was "scaling the wall . . . in between the first and second floor[] [a]nd I guess he lost his footing or his hold of his hands or something and fell." However, Mr. Helton also testified that he did not see how Employee was working before he fell, and he repeatedly testified he was unsure exactly how Employee was holding onto the wall before he fell, stating that he "wasn't paying attention to what [Employee] was doing really." When asked specifically whether Employee would use one arm to put up the insulation and one to hold on, or whether Employee used both arms to put up insulation, he stated "speculation would be he's holding on with one and putting [insulation] in with the other one, but I don't know." Nonetheless, Mr. Helton agreed that in his opinion the method Employee used to put up insulation in that location was dangerous because "you just need a ladder." When asked whether he had "crawled out on that – those 2 x 4s like [Employee] did to hang insulation," he testified "I've done it before, yes." He further testified that if he had been installing insulation in the foyer area he "would have put the pieces up there . . . with a stick, and then [he] would have come back with a ladder and stapled it."[1]

---

[1] Mr. Helton testified that the sticks were "one of the tricks of the trade," and that "we'd make them," but that Employer did not require installers to use sticks. Mr. Helton did not know whether Employee was using a stick when he fell and testified, "I don't even remember if there was a stick in the house or not."

Employer's general manager, Kerry Johnson, testified he discussed Employee's dangerous manner of performing work with Employee when he was hired in 2016. Employee had previously worked for Employer, and in 2014 he suffered injuries while installing insulation on a job similar to the job being performed at the time of the January 2017 accident. Mr. Johnson testified that in the earlier incident, Employee found a scrap piece of wood on the job and nailed it across the foyer so he could walk across the area "in lieu of moving the ladder." He testified Employee nailed both sides of the board "[a]nd he stepped onto the board and it pulled the nail out of the stud, because he had a short nail . . . and he fell because of using the scrap wood and not using the techniques he was taught." Mr. Johnson testified that nailing a board across the foyer and standing on it was a violation of Employer's safety protocol, and that "nothing in our rule book allows you to do that." Employee denied that his earlier accident resulted from a fall from a 2 x 4 that he had nailed across a foyer. He testified "[w]e had a scaffold made – a homemade scaffold made up and the scaffold fell" while he had one foot on a ladder and the other foot on the scaffold.

Mr. Johnson testified that after the 2014 incident, and while Employee continued to work for Employer, he had several discussions with him about how the incident occurred. He testified he rehired Employee in October 2016, which he said "was a decision that . . . was out of friendship," and that when Employee was rehired he discussed the requirement that Employee follow procedures and protocols, including the use of ladders. He testified:

> And my words were, look, you can't put yourself in harm's way. You can't expose me as your supervisor. You have got to be careful. You have to take care of yourself, you know, and use a ladder. I mean, you can't – you can't come in here and, you know, act like a cowboy and . . . take unnecessary chances.

Mr. Johnson testified that upon hiring a worker, a Safety Handbook is available and employees are required to review the handbook and sign a document acknowledging that they reviewed the handbook. Both the Safety Handbook and an acknowledgment signed by Employee, dated October 11, 2016, were admitted into evidence.

Mr. Johnson testified that, in conjunction with his assistant manager, Larry Moore, he conducted an investigation following Employee's January 2017 accident. After contacting Mr. Moore immediately following the accident and directing him to go to the jobsite for an initial walk-through, Mr. Johnson "made an accident report . . . and then went to the hospital while Larry [Moore] did the initial walk-through and investigation at the site." He testified he went to the accident scene the following morning with Mr. Moore and talked in-depth with Employee's co-worker, Mr. Helton, to determine how the accident happened. He testified that Employee "was probably – and what Brian [Helton] told [him], that he was . . . holding on to a stud . . . [indicating] in a horseshoe shape,

3

clamped onto it while trying to install insulation above him." He testified that is "absolutely not" the way insulation is supposed to be installed. Mr. Johnson further testified that, while visiting Employee in the hospital, Employee expressed remorse, stating he knew he should not have been climbing on the exposed studs to install insulation and that he was sorry the incident occurred.

Employer asserted affirmative defenses to Employee's claim based upon Tennessee Code Annotated section 50-6-110(a). It contended that no compensation was due because of Employee's willful misconduct in performing his work in such a dangerous manner and in violation of Employer's rules, and because of his willful failure or refusal to use safety devices that Employer made available for installing insulation. Employer contended that its Safety Handbook provided "the foundation" for the rules it alleged Employee violated. As stated in a "Disclaimer" on the first page of the handbook, "[Employer] asks and expects that any and all employees . . . undertake all possible efforts to prevent exposing themselves or others to hazards; . . . and to ensure that all required protective clothing and equipment is regularly worn, inspected, and maintained." Mr. Johnson acknowledged there was not a specific rule addressing the use of ladders and testified it would be impossible to foresee every instance in which an employee might behave in an unsafe manner. In addition, he testified that Employer held safety meetings at which the use of ladders to install insulation at heights was discussed.

Employer's assistant manager, Mr. Moore, testified that he conducted an investigation of the accident and went to the jobsite about an hour after the accident "and took pictures and tried to portray what happened." Based on his investigation, he concluded that Employee "was standing on the top plate of the wall . . . hanging on with one arm and insulating with the other." He testified that was not the proper way to install batt insulation and was unsafe, and that he had "never seen or heard of anybody doing anything of that nature." He testified there were "quite a few different ways" that would be proper to install batt insulation at a location like this, stating "[y]ou can use a legitimate wide board; you can use a ladder; [and] you can use a stick." He testified he knew that Employee had been trained or told the proper method to install insulation "[b]ecause we have monthly and bi-monthly meetings about safety," which Employee attended. Mr. Moore testified that he concluded from his investigation that Employee committed a safety violation because he "could have used a hard hat, ladder," and that this accident was preventable because Employee "could have used a ladder or a stick." Further, when asked about enforcement of Employer's safety policies, he testified "if I [saw] you doing that, that you would be terminated immediately because you're working in an unsafe manner." He testified that the method used to determine whether an employee is violating policies was to "go around to the job sites," and that he did so "[j]ust about every day."

Mr. Moore acknowledged that none of the personal protective equipment that Employee was required to wear would have prevented the fall. When asked to identify

4

any specific rule in the Safety Handbook that he thought Employee violated that could have prevented the fall had Employee followed the rule, he responded, "[w]orking in an unsafe manner." When asked whether the rule prohibiting working in an unsafe manner was the rule Mr. Johnson was referring to when he testified employees were not to "put themselves in harm's way," he agreed it was. He testified that the handbook also required employees to use and practice safe means and methods and to use equipment, but neither Mr. Johnson nor Mr. Moore identified any other rule in the Safety Handbook as having been violated by Employee. Additionally, Mr. Moore testified that Employee was still an employee at the time of the expedited hearing.

Following the conclusion of the expedited hearing, the trial court determined that Employee established that he suffered injuries that arose primarily out of his employment and that he was likely to meet his burden at trial of proving he suffered a compensable injury. The trial court further determined that Employer "is unlikely to meet its burden of establishing all of the elements of [its] defenses at a hearing on the merits." More specifically, the trial court found that the Employer's "failure to enforce its rule on the occasion of [Employee's] first work injury . . . precludes a finding of a consistent, bona fide enforcement of the rule in question." Accordingly, the trial court awarded Employee the requested medical benefits and a portion of the requested temporary disability benefits. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2016).

## Analysis

Initially, we note that Employer cites Tennessee Code Annotated section 50-6-217(a)(3) (2016) (repealed 2017) in support of its argument that the trial court's decision is not "supported by substantial and material evidence." Section 50-6-217(a)(3) authorized the Appeals Board to reverse or modify the decision of a workers' compensation judge if the rights of any party were prejudiced because findings of the judge "[a]re not supported by evidence that is both substantial and material in light of the entire record." However, this code section was deleted effective May 9, 2017. Consequently, and as noted above, the standard we apply in reviewing the trial court's decision presumes that the trial judge's factual findings and conclusions are correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7). Accordingly, the trial court's findings and conclusions concerning whether Employer established the elements of its affirmative defenses come to us with a

5

presumption of correctness that can only be overturned if the preponderance of the evidence is otherwise.

In *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012), the Tennessee Supreme Court addressed the affirmative defenses of willful misconduct and willful failure to use a safety device. After addressing prior opinions concerning both defenses, the Court in *Mitchell* noted an overlap in the elements required to successfully establish both defenses and accepted Professor Larson's suggestion that the elements required to assert successful defenses for willful misconduct and failure to use a safety device should be determined by the same standard. Concluding that "Larson's four-step test establishes straightforward guidelines for evaluating claims of willful misconduct and the willful failure or refusal to use a safety appliance," the Court "adopt[ed] the [Larson] standard for this and future cases involving these statutory defenses." *Id.* at 453. In the instant case, the trial court recognized *Mitchell* as controlling and analyzed the four elements that *Mitchell* required Employer to prove to establish affirmative defenses under sections 50-6-110(a)(1) and (4): (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule.

Although Employer relied upon the affirmative defenses in sections 50-6-110(a)(1) and (4) in the trial court,[2] it bases this appeal on the willful misconduct defense alone. In addition to its argument that Employee failed to abide by the safety policies identified in its Safety Handbook, it asserts that Employee failed to use a ladder as he had been counseled and argues these failures evidence Employee's willful misconduct. Employer cites as error the trial court's determination that it would be unlikely to prove at trial "the 3rd element of [*Mitchell*], 'bona fide enforcement' because [Employee] might assume [Employer] was not serious about enforcement of [the] rule because of its past conduct."

Although citing no authority, Employee insists on appeal that "[a] general safety violation cannot be used for a willful misconduct violation." Employee raised this issue in the trial court, asserting that Employer did not present a specific safety rule that Employee was alleged to have violated, "so we don't get into that *Mitchell* test." While the issue was raised below, the trial court did not address whether Employer's safety rules were too vague for an alleged violation to constitute willful misconduct. However, in addressing the first element of *Mitchell* requiring actual notice of a safety rule, the trial court noted Employee's "suggestion" to be correct that the Safety Handbook "did not

---

[2] Tennessee Code Annotated sections 50-6-110(a)(1) and (4) (2016) provide that "[n]o compensation shall be allowed for an injury or death due to: [t]he employee's willful misconduct; . . . [or] [t]he employee's willful failure or refusal to use a safety device[]."

identify ladders as safety equipment and contained no specific instructions or requirements as to when workers were to use ladders."[3]

The trial court stated it would be unreasonable to impose a duty on an employer to anticipate every possible unsafe decision by an employee, adding that "[t]his is especially true in a case such as this one, where an employee does something so patently unsafe as to violate the general admonishment of the Safety Handbook to 'undertake all possible efforts to prevent exposing themselves or others to hazards.'" Noting that Employer's general manager, Mr. Johnson, credibly testified that he gave Employee "specific and personal counseling about the necessity of using a ladder," the trial court concluded that "[c]onsequently, the Court finds that [Employee] had actual notice of a rule prohibiting the kind of unsafe behavior that caused his injuries and thus satisfies the first criteria of *Mitchell*." In addition, the trial court found that Employee "must have understood the danger in violating the rule . . . in light of the fact that his prior injury occurred in a very similar manner – because of his failure to use a ladder to install insulation at a height." Noting that Employee's lack of memory rendered him "unable to offer any excuse for his failure to abide by [Employer's] safety rules," the trial court concluded "this case meets both the second and the fourth criteria of *Mitchell*."

Addressing *Mitchell's* third element requiring bona fide enforcement of the rule at issue, the trial court stated that it appeared Employer "made genuine efforts to instill safe practices in its employees and made random visits to the jobsites to confirm compliance." However, the court found Employer had not established that it consistently disciplined employees for violations of the rule at issue. The trial court observed that Employee had been injured in a similar manner during a previous period of employment, but that he was not disciplined for the violation and was subsequently rehired. The trial court stated that Employer's "failure to enforce its rule on the occasion of [Employee's] first work injury caused by a patently unsafe act precludes a finding of a consistent, bona fide enforcement of the rule in question." Furthermore, Employee was not disciplined following the injury in this instance despite the fact that Mr. Johnson testified he had counseled Employee on this very issue at the time he was rehired. Moreover, Mr. Moore acknowledged that Employee was still an employee at the time of the hearing. Accordingly, we agree with the trial court that Employer has not demonstrated "consistent, bona fide enforcement of

---

[3] In arriving at a uniform approach to willful misconduct and willful failure or refusal to use a safety device, the *Mitchell* Court did not express an opinion concerning the degree of specificity required of a safety rule in order for its violation to amount to willful misconduct. It did note, however, that in adopting *Larson's* test, it is necessary for the defense to prove that "the employee had actual knowledge of the policy." *Mitchell*, 368 S.W.3d at 453. Prior to *Mitchell*, the Tennessee Supreme Court observed that the statutory willful misconduct defense "has, in practical application, been largely limited to the deliberate and intentional violation of *known regulations* designed to preserve the employee from serious bodily harm." *Bryan v. Paramount Packaging Corp.*, 677 S.W.2d 453 (Tenn. 1984) (emphasis added). Indeed, "willful misconduct" has been limited to the willful disobedience of "known and understood prohibitions." *Wright v. Gunther Nash Mining Constr. Co.*, 614 S.W.2d 796, 798 (Tenn. 1981).

the rule in question," and for that reason we agree with the trial court's determination that Employer failed to establish an essential element of its affirmative defense.

## Conclusion

For the foregoing reasons, we hold that the evidence at this stage of the case does not preponderate against the trial court's decision. Accordingly, we affirm the trial court's decision and remand the case for any further proceedings that may be necessary.

**FILED**

**September 6, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:59 A.M.**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Jack Glasgow | ) | Docket No.   2017-05-0225 |
| | ) | |
| v. | ) | State File No.  3128-2017 |
| | ) | |
| 31-W Insulation Co., Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of September, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Andrea Meloff | | | | | X | ameloff@ddzlaw.com |
| Owen Lipscomb | | | | | X | owen.lipscomb@libertymutual.com |
| Dale Tipps, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov